IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

BENJAMIN MUHAMMAD JONES                                                                      PLAINTIFF

        v.                              Civil No. 1:12-cv-01071

SERGEANT THOMAS MILLER, ET AL.                                                            DEFENDANTS

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

        This is a civil rights action filed by the Plaintiff, Benjamin Jones, pursuant to 42 U.S.C. § 1983.  Plaintiff is currently incarcerated in the Arkansas Department of Corrections Maximum Security Unit in Tucker, Arkansas ("Tucker Unit").  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

        The case is before me for preservice screening under the provisions of the Prison Litigation Reform Act ("PLRA").  Pursuant to 28 U.S.C. § 1915A, the Court shall review complaints in civil actions in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).

**I.    BACKGROUND**

        Plaintiff  filed his original Complaint in the Eastern District of Arkansas on June 26, 2012.  ECF No. 2.  The Eastern District properly transferred it to this Court on June 25, 2012.  ECF No. 4.  Plaintiff's original Complaint along with its exhibits compromised approximately 121 pages.  In order to clarify Plaintiff's claims and the persons he intended to be defendants in this matter, the Court prepared a questionnaire to serve as an addendum to Plaintiff's original Complaint.  The

Court sent Plaintiff the questionnaire and directed him to return it to the Court on November 26, 2012. On November 1, 2012, the court received Plaintiff's completed addendum in its Clerk's Office, however, the addendum was inadvertently lost before it could be docketed. Therefore, the Court re-sent Plaintiff the questionnaire and extended his deadline to return it completed to February 13, 2013. ECF No. 8. Plaintiff failed to respond by the February 13, 2013 deadline prompting the Court to issue an Order to Show Cause. ECF No. 9. Plaintiff responded to the Court's Order to Show Cause on May 23, 2013 by filing the completed questionnaire as an Addendum to his original Complaint. ECF No. 10.

While the Addendum does clarify some issues presented in Plaintiff's original Complaint, it also raises additional ambiguities as to who Plaintiff intended as Defendants in this matter.

In his Addendum, Plaintiff states that he intends Sgt. Thomas Miller; Mayor Brian Martin; Mike Warren; P. Gonzales; John Doe (African-American dog catcher for Warren Police Department); Patrick Patton; Judge Bruce Anderson; Sgt. Don Hollingsworth; Mark Danzy; Corp. Terrence Moore; Dept. John Burnside; Alice Woods; Mike Jolly; Chief Randy Pete; Dr. Mitchell Weaver; and Chuck Lanehart to be Defendants in this action. Plaintiff also states multiple claims against Carolyn Simmons even though he does not specifically list her as a Defendant. The Court presumes Plaintiff intended Simmons to be a Defendant in this matter.

Plaintiff also alleges multiple claims in his Addendum. Specifically, Plaintiff claims: (1) he was denied hygiene products while incarcerated in the Warren Police Department ("WPD") and the Ashley County Detention Center ("ACDC"); (2) he was constantly asked to be a "snitch;" (3) he was denied the use of a restroom on the night of his arrest—October 28, 2011; (4) he was denied medical treatment on the night of his arrest; (5) he was denied prescription medication

2

while incarcerated in WPD and ACDC; (6) WPD and ACDC allowed jailers without medical training to pass out medication; (7) all of his possessions were thrown away by the Warren Housing Authority ("WHA"); (8) there was a conspiracy against Plaintiff between employees of the WHA, WPD, and his parole officer Chuck Lanehart; (9) his grievances were destroyed; (10) he was discriminated against based on his race; (11) he was denied religious services and his religion was mocked; (12) he was fed pork and forced to use Colgate toothpaste; (13) his apartment and person were searched without a warrant or consent; (14) his bicycle was not properly seized; (15)  Officer Danzy falsified state document; (16) he was defamed; (17) he was denied access to the courts; (18) he was retaliated against; (19) he was denied his prescribed medical diet; (20) his legal mail is being tampered with; (21) he requests to be separated from a fellow inmate at the ADC; and (22) he requests a federal investigation into the WHA.

In the Addendum the Court asked Plaintiff to specifically allege how he believes each Defendant violated his constitutional rights.  Plaintiff provided the following explanations:

- Sgt. Thomas Miller is an employee of the WPD.  Plaintiff claims Miller denied him hygiene products and prescription medication while Plaintiff was housed at the WPD.  ECF No. 10, p. 3.

- Brian Martin is the mayor of Warren, Arkansas.  Plaintiff claims Martin conspired against Plaintiff.  Plaintiff also explained he named Martin as a Defendant because he "oversees" the WPD and the WHA.  ECF No. 10, p. 3.

- Mike Warren is employed by the WPD.  Plaintiff  claims Warren is a racists; Warren denied Plaintiff use of the restroom during Plaintiff's booking; and Warren mocked Plaintiff's religion.  ECF No. 10, p. 4.  Plaintiff also claims Warren denied him prescription

3

- medication. ECF No. 10, p. 15.

- P. Gonzales is employed by the WPD. Plaintiff claims Gonzales fed Plaintiff pork and forced him to use Colgate toothpaste, passed out medication without authorization, and used racial slurs. Additionally, Gonzales did not allow Plaintiff to use the restroom on the night of his arrest. ECF No. 10, pp. 4, 19. Lastly, Plaintiff claims Gonzales denied him prescription medications. ECF No. 10, p. 15.

- John Doe is employed as a dog catcher for WPD. Plaintiff claims John Doe fed Plaintiff pork; forced him to use Colgate toothpaste; passed out medication without authorization; and mocked Plaintiff's religion. ECF No. 10, pp. 5, 19. Plaintiff also claims John Doe denied him prescription medication. ECF No. 10, p. 15.

- Plaintiff did not indicate where Patrick Patton is employed but Plaintiff claims Patton witnessed the WHA throw away all of Plaintiff's belongings. ECF No. 10, pp. 6-7.

- Honorable Bruce Anderson ("Judge Anderson") is the District Judge for Bradley County Arkansas. Plaintiff claims Judge Anderson instructed Defendant Hollingsworth to give Plaintiff all of his prescribed medication while he was in custody. Plaintiff also alleges Judge Anderson knew "first hand" of the mistreatment Plaintiff received at the WPD, ACDC, and the Bradley County Hospital. ECF No. 10, pp. 7-8.

- Sgt. Don Hollingsworth is employed by the WPD. Plaintiff claims Hollingsworth denied Plaintiff medication and constantly asked Plaintiff to "snitch." ECF No. 10, p. 8.

- Mark Danzy is employed by the WPD. Plaintiff claims Danzy arrested him; "ransacked" his apartment at the WHA without a search warrant; searched Plaintiff's person without consent; did not impound his bicycle; falsified state documents; and mocked Plaintiff's

"American Muslim Religion." ECF No. 10, pp. 8-9. Plaintiff also alleges Danzy denied him use of a restroom on the night of his arrest. ECF No. 10, p. 13. Further, Plaintiff claims Danzy denied him medication while in WPD custody. ECF No. 10, p. 15. Lastly, Danzy fed Plaintiff pork and forced Plaintiff to use Colgate toothpaste. ECF No. 10, p. 19.

- Corp. Terrence Moore is employed by the WPD. Plaintiff claims Moore endangered Plaintiff's life because he knew his fellow officers "did all this injustice." ECF No. 10, p. 9. Plaintiff also claims Moore denied him use of the restroom on the night of his arrest. ECF No. 10, p. 13. Additionally, Plaintiff claims Moore denied Plaintiff medication. ECF No. 10, p. 15. Further, Moore failed to impound Plaintiff's bicycle on the night of his arrest. ECF No. 10, p. 16. Lastly, Moore fed Plaintiff pork and forced him to use Colgate toothpaste. ECF No. 10, p. 19.

- John Burnside is employed at the ACDC. Plaintiff indicates in the Addendum that he intends Burnside to be a Defendant and also "[n]ot a party." Plaintiff claims Burnside witnessed Mike Warren refuse Plaintiff's request to use the restroom and mock Plaintiff's religion on the night of his arrest. ECF No. 10, p. 9. Plaintiff also claims Burnside himself denied Plaintiff use of the restroom on the night of his arrest. ECF No. 10, p. 13. Given Plaintiff's claims against Burnside, the Court presumes Plaintiff intends him to be a Defendant in this matter.

- Alice Woods is employed at the ACDC. Plaintiff also marked that he intended Woods to be a Defendant and also "[n]ot a party." Plaintiff claims Woods should not have allowed Mike Warren to bring Plaintiff into the ACDC in the "inhumane condition" he did. Plaintiff also claims Woods denied him religious rights, medical treatment, and medication.

5

ECF No. 10, p. 10. Additionally, Plaintiff claims Woods denied him use of the restroom on the night of his arrest. ECF No. 10, p. 13. Given Plaintiff's claims against Woods, the Court presumes Plaintiff intends her to be a Defendant in this matter.

- Mike Jolly is employed by the WHA. Plaintiff claims that Jolly disposed of all of his belongings from his apartment at the WHA without attempting to contact any of Plaintiff's relatives first. ECF Nos. 10, pp. 10-11, 16. Plaintiff also claims Jolly denied him medication while in WPD custody. ECF No. 10, p. 15. Additionally, Plaintiff claims Jolly invaded his privacy because Plaintiff paid his rent in full. ECF No. 10, p. 16.

- Chief Randy Pete is employed by the WPD. Plaintiff claims Pete oversees all of the WPD; destroyed Plaintiff's grievances; allowed WPD staff to discriminate; conspired with Jolly and Plaintiff's parole officer Chuck Lanehart against Plaintiff; did not investigate Danzy's background, and did not provide proper medical staff at the jail to pass out medication to inmates. ECF No. 10, p. 11. Plaintiff also claims that Pete denied him medication while he was in WPD custody. ECF No. 10, p. 15.

- Dr. Mitchell Weaver was Plaintiff's doctor while Plaintiff lived in Warren, Arkansas. Plaintiff indicates he intends Dr. Weaver to be a Defendant in this matter but also "[n]ot a party." Plaintiff goes on to explain that Dr. Weaver has all of Plaintiff's medical records and missed appointments due to Mike Jolly and James Kitchen, Carolyn Byrd, and Sheila Jackson's[1] "conspiracy to coverup for requesting grievances for losse (sic) destruction . . . of . . . personal property." ECF No. 11.

- According to Plaintiff Chuck Lanehart is employed by the Arkansas Department of

---

[1] Kitchens, Byrd, and Jackson are not named defendants in this case.

        Corrections in Monticello, Arkansas. Plaintiff claims Lanehart conspired with the WPD employees and the WHA employees against Plaintiff. Plaintiff did not elaborate on this alleged conspiracy other than to say Lanehart had relatives on the mental health board in Pine Bluff, and Lanehart did not escort Plaintiff in a state vehicle so Plaintiff could be placed on medication for his chemical imbalance. ECF No. 10, pp. 12-13.

- Carolyn Simmons is employed by the ACDC. Plaintiff claims Simmons, denied him medication while he was in the custody of WPD. ECF No. 10, p. 15. Plaintiff also claims Simmons fed him pork and forced him to use Colgate toothpaste.

In his Addendum the Court also asked Plaintiff to expand his explanation of his specific claims. Plaintiff provided the following explanations:

- Regarding his denial of medical care claim, Plaintiff claims he suffered from a head wound and was denied medical attention for this wound. ECF No. 10, pp. 13-14. Plaintiff also states in his Addendum that paramedics treated his head wound at the scene of his arrest, and he was taken to Bradley County Hospital before being booked into the jail. ECF No. 10, p. 14. Plaintiff explains that he believes he was denied medical care because the head wound was still bleeding after the paramedics treated it on the scene of his arrest. ECF No. 10, p. 15.

- Regarding his retaliation claim, Plaintiff claims Mike Jolly, Chuck Lanehart, Carolyn Byrd, James Kitchen, Randy Pete, and Sheila Jackson had a conspiracy against him for filing grievances at the WHA. ECF No. 10, p. 14. This is the only explanation given by Plaintiff of the retaliation claim.

- Regarding to his defamation claim in his original Complaint, Plaintiff failed to respond to

7

the Court's inquiries into the details of this claim. ECF No. 10, p. 15.

- Regarding his denial of access to courts claim in his original Complaint, Plaintiff also failed to respond to the Court's inquires into the details of this claim. ECF No. 10, p. 17.

- Regarding his denial of religious services claim, Plaintiff stated: "I wasn't able to continue going to Pine Bluff Ark to worship on Fridays, Tumal Prayer Service, Ramdans, Etc. my true spiritual growth, n/a." ECF No. 10, p. 17 (errors in original).

- Regarding his denial of special diet claim, Plaintiff explained that employees of the ADC prescribed him a "cardiovascular diet" with no added salt, low fat, and low cholesterol but the "Warren Jail" did not provide him this prescribed diet. ECF No. 10, p. 18.

- Regarding his pork claim, Plaintiff claims he was fed pork while at the "Warren City Jail," and also forced to use Colgate toothpaste which contains pork ingredients. Plaintiff did not offer any further explanation regarding this claim.

Lastly, Plaintiff attached several Affidavits to his Addendum. The first Affidavit states that Mrs. Golley in the mail room at the Tucker Unit is tampering with his legal mail. ECF No. 10, p. 21. The second Affidavit requests the Court order a specific inmate at the Tucker Unit be separated from Plaintiff. ECF No. 10, p. 22. The third Affidavit requests a federal investigation of Mike Jolly, James Kitchens, and Sheila Jackson from the WHA. ECF No. 10, p. 23.

## II. DISCUSSION

Pursuant to the screening provisions of the Prison Litigation Reform Act, I must determine whether the causes of action stated in the Complaint (1) are frivolous or malicious, (2) fail to state claims upon which relief may be granted, or (3) seek monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915(A). A complaint is frivolous if

it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).

      a.      <u>Official capacity and supervisor liability</u>

Plaintiff states in his original Complaint that he is suing Defendants in both their official and individual capacities. Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or in both. In *Gorman v. Bartch,* the Eighth Circuit Court of Appeals ("Eighth Circuit") discussed the distinction between individual and official capacity suits. As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24–27, 112 S.Ct. at 361–62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25–27, 112 S.Ct. at 362.

*Gorman,* 152 F.3d 907, 914 (8th Cir.1998). Plaintiff failed to allege any policy or custom of the City of Warren or Ashley County that caused Defendants to violate his constitutional rights. "[R]igorous standards of culpability and causation must be applied to ensure that the [city] is not held liable solely for the actions of its employee" in cases where a plaintiff claims a city has caused an employee to violate the plaintiff's constitutional rights. *Board of County Commissioners, Oklahoma v. Brown,* 520 U.S. 397, 405 (1997). There are no allegations in Plaintiff's Complaint or Addendum to support an official capacity claim against Defendants. Further, a claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Social Services,* 436 U.S. 654, 694 (1978). In other words, the City of Warren and Ashley County

9

cannot be held liable based merely on the fact it employs Defendants. Therefore, Plaitniff has failed to state an official capacity claim against all of the Defendants.

Likewise, Mayor Brian Martin cannot be liable simply because he "oversees" the WPD and WHA, and Chief Randy Pete cannot be liable because he oversees the WPD. Therefore, Plaintiff has failed to state individual capacity claims against Martin and Pete based on their supervisory roles over the WPD and WHA. "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir. 1994); *see also Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability"). Plaintiff's conspiracy claim against Martin remains. Plaintiff's claims that Pete destroyed grievances, allowed staff to discriminate, conspired with Jolly, failed to investigate Danzy's background; failed to provide medical staff; and denied Plaintiff medication also remain.

  b. <u>No claim stated</u>

Plaintiff failed to state claims against Patrick Patton and Dr. Mitchell Weaver. Plaintiff only states that Patton witnessed the WHA employees destroy Plaintiff's belongings. He did not allege any actions Patton took relating to the belongings. Similarly, Plaintiff did not make any allegations against Dr. Weaver. Plaintiff only states that Dr. Weaver was his doctor while he lived in Warren and Dr. Weaver has all of Plaintiff's medical records. Plaintiff did not allege any facts against Patton or Dr. Weaver that would implicate the Constitution.

Furthermore, Plaintiff did not allege Patton or Weaver acted under color of state law. Section 1983 authorizes a private right of action against persons who, acting under color of state law, deprives the plaintiff of "any rights, privileges, or immunities secured by the Constitution .

10

. .." *Moore v. City of Desloge*, 647 F.3d 841, 846 (8th Cir. 2011). To state a valid claim under section 1983, the Plaintiff must show the actor was acting under color of state law when he allegedly violated the Plaintiff's constitutional rights. *See West v. Atkins*, 487 U.S. 42, 48 (1988). More simply, only a state actor can be held liable under section 1983. *See Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001).

Accordingly, Plaintiff failed to state a claim against Patrick Patton or Dr. Mitchell Weaver and both should be dismissed from this case.

    c.    <u>Immunities</u>

Plaintiff claims that Judge Anderson had "first hand" knowledge of the mistreatment Plaintiff suffered in WPD, ACDC, and Bradley County Jail.

Judges are generally immune from lawsuits. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991) ("judicial immunity is an immunity from suit, not just from ultimate assessment of damages"); *Duty v. City of Springdale,* 42 F.3d 460, 462 (8th Cir. 1994) (judges are generally immune from suit for money damages); *Robinson v. Freeze*, 15 F.3d 107, 108 (8th Cir. 1994) ("Judges performing judicial functions enjoy absolute immunity from § 1983 liability."). Judicial immunity is only overcome in two situations: (1) if the challenged act is nonjudicial; and (2) if the action, although judicial in nature, was taken in the complete absence of all jurisdiction. *Mireles*, 502 U.S. at 11; *see also Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction") (internal citations omitted).

Plaintiff failed to allege any facts, in his Complaint or Addendum, to indicate either of

11

these situations apply here. To the contrary, according to Plaintiff, Judge Anderson did not take any actions outside his judicial capacity. In fact, Plaintiff did not allege any actions on behalf of Judge Anderson other than a claim that Judge Anderson instructed Defendant Hollingsworth, at Plaintiff's arraignment, to make sure Plaintiff received his medications while incarcerated. Therefore, Plaintiff's claim against Judge Anderson is barred by the doctrine of judicial immunity.

      d.      <u>Jurisdiction</u>

Plaintiff states several claims in his Addendum against his parole officer Chuck Lanehart. According to Plaintiff, Lanehart is employed by the ADC in Monticello, Arkansas and the actions Plaintiff complains of relating to Lanehart took place in Pine Bluff, Arkansas. Monticello, located in Drew County, and Pine Bluff, located in Jefferson County, are both outside of this Court's jurisdiction. Both Monticello and Pine Bluff are located within the Eastern District of Arkansas.

Further, Plaintiff claims Mrs. Golley in the mail room at the Tucker Unit is tampering with his legal mail, and Plaintiff also requests the Court order a fellow inmate at the Tucker Unit be separated from Plaintiff. The Tucker Unit is located in Tucker, Arkansas in Jefferson County. Again, Jefferson County is not within this Court's jurisdiction, but instead lies within the jurisdiction of the Eastern District of Arkansas.

The federal venue statute provides that a case not based on diversity jurisdiction should be filed in the judicial district where "any defendant resides" or "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b). The events Plaintiff complains of with regard to these three specific claims occurred in Jefferson County.

Therefore, the Court concludes the interest of justice will best be served if Plaintiff's claims against Lanehart, Mrs. Golly, and his request for injunctive relief against the Tucker Unit be dismissed without prejudice so he can properly bring them in the United States District Court for the Eastern District of Arkansas.

Accordingly, Plaintiff's claims against Lanehart, Mrs. Golly, and the Tucker Unit should be dismissed without prejudice.[2]

   e.   Denial of medical care

Plaintiff claims he was denied medical care of a head wound he received on the night of his arrest.

To prevail on his denial of medical care claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Plaintiff must show

---

[2] This case was originally filed in the Eastern District of Arkansas and transferred to this Court based on the Eastern District Court's conclusion that the actions complained of by Plaintiff occurred within the Western District of Arkansas. It was not until Plaintiff filed his recent Addendum that it became apparent he also intends to allege claims regarding actions occurring within the Eastern District of Arkansas. Given the stage of the instant case, and the fact that Plaintiff's Eastern District claims are still within the statute of limitations period, the Court is recommending dismissal without prejudice rather than a severance and transfer of the two claims.

he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

"For a claim of deliberate indifference, the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

It is well settled that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citations omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976). However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish."

*Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009). The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record. *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005).

     Here Plaintiff claims that he was denied medical care because his head wound continued to bleed after paramedics treated it at the scene of his arrest. Plaintiff also states he was taken to the Bradley County Hospital after his arrest but before being booked into the jail. Considering the facts alleged by Plaintiff, he has failed to state a denial of medical care claim, regarding his head wound, upon which relief my be granted. Plaintiff was not denied medical care nor was his medical care delayed. He received treatment on the scene by paramedics and he was then transported to the hospital prior to booking. Plaintiff merely disagrees with the type of treatment given to him by the paramedics on the scene because his wound continued to bleed while he was transported to the hospital. This disagreement with treatment does not rise to the level of a constitutional violation. *See Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010).

     Accordingly, Plaintiff failed to state a denial of medical care claim relating to his head wound. Plaintiff also claims that he was denied medical care when he was denied his medically prescribed "cardiovascular diet." This claim for denial of medical care shall proceed.

     f.    <u>Defamation claim</u>

     The Court interpreted Plaintiff's original Complaint to include a defamation claim. Based on this interpretation, the Court requested Plaintiff explain the defamation claim in detail in his Addendum. Plaintiff did not respond to this request. The Court must, therefore,

15

presume Plaintiff did not intend to assert a defamation claim in his Complaint.

  g.  Access to courts

The Court also interpreted Plaintiff's original complaint to include a denial of access to the courts claim. Based on this interpretation, the Court requested Plaintiff explain this claim in detail in his Addendum. Plaintiff did not respond to this request. The Court must, therefore, presume Plaintiff did not intend to assert a denial of access to the courts claim in his Complaint.

**III. CONCLUSION**

Accordingly, I recommend (1) all of Plaintiff's officially capacity claims against all Defendants; (2) Plaintiff's individual capacity claims based on supervisor liability against Brian Martin and Randy Pete; (3) all of Plaintiff's claims against Patrick Patton; (4) all of Plaintiff's claims against Dr. Mitchell Weaver; (5) all of Plaintiff's claims against the Honorable Bruce Anderson; (6) all of Plaintiff's claims against Chuck Lanehart; (7) Plaintiff's claims against Mrs. Golley at the Tucker Unit; (8) Plaintiff's request for injunctive relief regarding removal of a fellow inmate at the Tucker Unit; (9) Plaintiff's denial of medical care claims regarding his head wound against all Defendants; (10) Plaintiff's defamation claim against all Defendants; and (11) Plaintiff's denial of access to the court's claim against all Defendants be **DISMISSED** without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i-iii) and 1915A(a). Further, I recommend Patrick Patton, Dr. Mitchell Weaver, the Honorable Bruce Anderson, Chuck Lanehart, and Mrs. Golly be **DISMISSED** from this action.

This leaves for later resolution Plaintiff's claims that (1) he was denied hygiene products while incarcerated in the WPD and ACDC; (2) he was constantly asked to be a "snitch;" (3) he

16

was denied the use of a restroom on the night of his arrest—October 28, 2011; (4) he was denied prescription medication while incarcerated in WPD and ACDC; (5) WPD and ACDC allowed jailers without medical training to pass out medication; (6) all of his possessions were thrown away by employees of the WHA; (7) there was a conspiracy against him between employees of the WHA and WPD; (8) his grievances were destroyed; (9) he was discriminated against based on his race; (10) he was denied religious services and his religion was mocked; (11) he was fed pork and forced to use Colgate toothpaste; (12) his apartment and person were searched without a warrant or consent; (13) his bicycle was not properly seized; (14) Defendant Danzy falsified state documents; (15) he was retaliated against; (16) he was denied his prescribed medical diet; and (17) the request for a federal investigation into the WHA. The Court will address the issue of service by separate order.

**The Plaintiff has fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. Plaintiff is reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **3rd day of June 2013.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE