IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION


BENJAMIN MUHAMMAD JONES                                          PLAINTIFF


           v.                        Civil No. 1:12-CV-01071


JOHN BURNSIDE; ALICE WOODS;
CAROLYN BYRD; JAMES KITCHEN;
SHELIA JACKSON; DISPATCHER JOLLY;
and SHAUN DOE                                                    DEFENDANTS


BENJAMIN MUHAMMAD JONES                                          PLAINTIFF


           v.                        Civil No. 1:12-CV-01091


JOHN BURNSIDE; ALICE WOODS;
CAROLYN BYRD; JAMES KITCHEN;
SHELIA JACKSON; DISPATCHER JOLLY;
and SHAUN DOE                                                    DEFENDANTS


**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Benjamin Jones filed Civil No. 1:12-cv-01071 and Civil No. 1:12-cv-01091 *pro se* pursuant to 42 U.S.C. § 1983.  These cases were consolidated by Order dated December 26, 2013.  ECF No. 33.[1]

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of

---

[1]All references to the docket are to Civil No. 1:12-cv-01071 unless otherwise noted.

making a Report and Recommendation.  Currently before the Court are Separate Defendants'
Motions for Summary Judgment.  ECF Nos. 63, 66.  The Court held a hearing on March 24, 2015
at which time it heard Plaintiff's oral response to these Motions for Summary Judgment.  After
careful consideration, the undersigned makes the following Report and Recommendation.

## 1.    BACKGROUND

Plaintiff originally filed Civil No. 1:12-cv-01071 on June 11, 2012 and Civil No. 1:12-cv-
01091 on August 15, 2012 in the Eastern District of Arkansas.  Both cases were later transferred
to this Court.  The Court later determined that these two cases involved common questions of law
and fact and consolidated the cases on December 26, 2013.  ECF No. 33.  In his Complaints,
Supplements and Addendums in both Civil No. 1:12-cv-1071 and 1:12-cv-1091, Plaintiff named
over 30 defendants and asserted multiple convoluted claims and seemingly unrelated facts against
each Defendant.  The Court previously disposed of all claims and Defendants except those against
Defendants Burnside and Wood ("Ashley Defendants"), Defendants Byrd, Kitchen, and Jackson
("Warren Defendants"), Defendant Dispatcher Jolly, and Defendant Shaun Doe.

I will only enumerate those background facts relevant to the Motions for Summary
Judgment currently before me.  According to Plaintiff's Complaints, Supplements, and
Addendums, in October 28, 2011, Plaintiff was arrested by the Warren Police Department, and
later booked into the Ashley County Detention Center ("ACDC").  Plaintiff claims his
constitutional rights were violated when: (1) he was denied a restroom on the night of his arrest;
(2) he was denied medical care and prescription medication while incarcerated at the ACDC; (3)
he was denied Islamic religious services, his prayer cap, and Koran; and (4) his personal property
was improperly disposed by the Warren Housing Authority ("WHA").

Ashley Defendants filed a Motion for Summary Judgment on December 3, 2014.  ECF No. 66.  In their Motion, the Ashley County Defendants argue Plaintiff failed to allege any official capacity claims against Ashley County.  Further, the Ashley Defendants allege they did not violate Plaintiff's constitutional rights, but even if they did they are entitled to qualified immunity on Plaintiff's claims regarding the denial of a restroom, denial of medical care, and denial of religious freedoms.  ECF No. 67.

Warren Defendants also filed a Motion for Summary Judgment on December 3, 2014.  Warren Defendants argue they did not violate Plaintiff's constitutional rights by disposing of Plaintiff's property because the Warren Defendants disposed of Plaintiff property pursuant to Plaintiff's consent and authorization.  ECF No. 64.

Plaintiff orally responded to both Motions at the March 24, 2015 hearing.

## 2.    LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party."  *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995).  The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  The Court must view all

evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**3.   DISCUSSION**

The Ashley and Warren Defendants have moved for dismissal of four of Plaintiff's claims: (1) the Ashley Defendants violated Plaintiff's constitutional rights by denying him a restroom on October 28, 2011; (2)  the Ashley Defendants violated Plaintiff's constitutional rights by denying him medical care and medications; (3) the Ashley Defendants violated Plaintiff's constitutional rights by denying him an Islamic religious service, and denying him his prayer cap and Koran while incarcerated at the ACDC; and (4) the Warren Defendants violated Plaintiff's constitutional rights by disposing of his personal property.[2]  However, before addressing the Motions for Summary Judgment, I must first address the issues surrounding Defendants Shaun Doe and Dispatcher Jolly.

A.   Shaun Doe and Dispatcher Jolly

I must first address an initial matter regarding Defendants "Dispatcher Jolly" and "Shaun Doe" listed on the docket sheet in this matter.

Shaun Doe and Dispatcher Jolly were listed as defendants in Plaintiff's Addendum to his Complaint in Civil No. 1:12-cv-01091.  ECF No. 40, Civil No. 1:12-cv-01091.  By Order dated

---

[2]As explained in more detail below, Plaintiff also has a denial of medical care claim against Defendant Dispatcher Jolly but that claim is not addressed herein.

June 7, 2013, I treated Plaintiff's Addendum as a Motion to Amend and granted Plaintiff leave to amend his Complaint in Civil No. 1:12-cv-01091 by adding Defendants Shaun Doe and Dispatcher Jolly. In the same Order, I directed Plaintiff to provide the Court with a place of employment or address for service for both Defendants. ECF No. 41, Civil No. 1:12-cv-01091. Plaintiff failed to respond with the necessary service information by the deadline imposed and I issued a Show Cause Order. ECF No. 42, Civil No. 1:12-cv-01091. Plaintiff failed to respond to the Show Cause Order and I issued a Report and Recommendation recommending his Complaint in Civil No. 1:12-cv-01091 be dismissed for failure to comply with the Court's Local Rules and Orders. ECF No. 44, Civil No. 1:12-cv-01091. Plaintiff filed an Objection to the Report and Recommendation in which he included the requested service information and the Honorable Susan O. Hickey declined to adopt the Report and Recommendation. ECF No. 48, Civil No. 1:12-cv-01091.

Subsequently, using the information provided by Plaintiff, I ordered service to issue on Defendants Shaun Doe and Dispatcher Jolly at the Warren Police Department. I also directed the Warren Police Department to notify the Court of any last known address for either Defendant if they refused service. ECF No. 50, Civil No. 1:12-cv-01091. The instant cases were then consolidated and all future filings were made in the lead case Civil No. 1:12-cv-01071. The service issued to Shaun Doe at the Warren Police Department was returned unexecuted with a notation that such a person was unknown to the Warren Police Department. ECF No. 35. The summons issued to Dispatcher Jolly was returned executed and his Answer was due on January 16, 2014. ECF No. 37.

While *pro se* pleadings are to be construed liberally, a *pro se* litigant is not excused from complying with substantive and procedural law. *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir.

1984).  However, plaintiffs proceeding *in forma pauperis* ("IFP") are entitled to rely on the U.S. Marshal Service to serve summons.  *See Mack v. Dillon*, 594 F.3d 620, 622 (8th Cir. 2010).  An IFP Plaintiff may not, however, do nothing once he receives notice of failure to effectuate service.  *Id.* (citing *Rance v. Rocksolid Granit USA, Inc.,* 583 F.3d 1284, 1286-88, n. 3 (11th Cir. 2009)).  While IFP plaintiffs should not be penalized for a marshal's failure to obtain proper service, it is the plaintiff's responsibility to provide the Court with a proper address for service. *See Lee v. Armontrout,* 991 F.2d 487, 489 (8th Cir. 1993).  Here, the Court attempted to aide Plaintiff in obtaining the proper address for service on Shaun Doe to no avail.  Accordingly, I recommend Shaun Doe be dismissed without prejudice.

It appears, however, that someone at the Warren Police Department did accept service on behalf of Dispatcher Jolly.  ECF No. 37.  Therefore, Defendant Jolly's answer to Plaintiff's Complaint and Addendum[3] was due on January 16, 2014.  ECF No. 37.  Defendant Jolly recently filed two motions challenging the executed return and seeking an extension to file an answer in this matter.  I will address these motions by separate order.

B.    Official capacity claims[4]

In his Addendum to his Complaint in Civil No. 1:12-cv-01091, Plaintiff was directly asked by the undersigned if he was alleging an official capacity claim against the Warren Defendants and if he was to explain the policy or custom that violated his constitutional rights in detail.  Plaintiff

---

[3]In his Addendum, Plaintiff claims for the first time that Dispatcher Jolly did not make arrangements to store Plaintiff's personal property, refused Plaintiff's grievance forms, and refused Plaintiff medical treatment.  ECF No. 40, Civil No. 1:12-cv-01091.

[4] Plaintiff's official capacity claims in Civil No. 1:12-cv-1071 were dismissed at the screening stage.  ECF Nos. 11, 16.  Those in Civil No. 1:12-cv-1091 were not, therefore, those claims will be addressed herein.

offered an explanation regarding conspiracies to violate his rights by defendants that have previously been dismissed from this case. Plaintiff failed to allege any purported policy or custom of the City of Warren.

Under section 1983, a defendant may be sued in either his individual capacity, or his official capacity, or in both. In *Gorman v. Bartch,* the Eighth Circuit Court of Appeals ("Eighth Circuit") discussed the distinction between individual and official capacity suits. As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24–27, 112 S.Ct. at 361–62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25–27, 112 S.Ct. at 362.

*Gorman,* 152 F.3d 907, 914 (8th Cir.1998). An official capacity claim against Defendants is essentially a claim against the City of Warren. "[R]igorous standards of culpability and causation must be applied to ensure that the [county] is not held liable solely for the actions of its employee." *Board of County Commissioners, Oklahoma v. Brown,* 520 U.S. 397, 405 (1997).

Additionally, a claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Social Services,* 436 U.S. 654, 694 (1978). In other words, the City of Warren cannot be held liable based merely on the fact it employs the Warren Defendants. Therefore, there are no genuine issues of material fact regarding Plaintiff's official capacity claims and these claims fail as a matter of law.

7

C.     Denial of restroom privileges

According to the Ashley Defendants' Statement of Facts, on October 28, 2011, Plaintiff was arrested by a non-defendant Warren Police Officer.  After his arrest, Plaintiff was taken to the Bradley County hospital and then transported to the ACDC.  Plaintiff urinated and defecated on himself before he arrived at the ACDC.  After arriving at the ACDC, Plaintiff was allowed to shower and change clothes.  The Ashley Defendants were at the ACDC when Plaintiff was booked into the jail but not present when he was arrested and transported.  ECF No. 68.

According to Plaintiff's oral response, he was not allowed to use the restroom at the ACDC until after he was searched and booked into the jail.  Once this was accomplished, he was allowed restroom privileges, a shower, and a change of clothes.  Plaintiff did not dispute any of the Ashley Defendants other assertions.

It appears Plaintiff's claim regarding the denial of a restroom attempts to challenge the conditions of his confinement in the ACDC.  "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."  *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) (citation omitted).  The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones.  *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Here, Plaintiff was a pre-trial detainee at the time of the alleged incidents, however, the Eighth Circuit applies the same deliberate indifference standard to pretrial detainees as applied to convicted inmates.  *See Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006) (deliberate indifference standard of the Eighth Amendment applies to claims, brought by pretrial detainees and convicted inmates, that prison officials failed to provide adequate food, clothing, shelter, etc.).  The

Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions involving "wanton and unnecessary infliction of pain," or that are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner" *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the Plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875. The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

The summary judgment record here, including Plaintiff's own oral response, indicates the Ashley Defendants played no role what so ever in denying Plaintiff restroom privileges causing him to urinate and defecate on himself. As stated above, a claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Clemmons v. Armontrout,* 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri,* 442 F.3d 1128,

1132 (8th Cir. 2006)).  Defendants Woods and Burnside cannot be held liable because they were not responsible for denying Plaintiff restroom privileges during his transport to the ACDC.

Further, once Plaintiff was booked into the ADC and searched, the Ashley Defendants allowed him to shower and change clothes.  It is undisputed that Plaintiff was not denied restroom privileges by Defendant Wood or Defendant Burnside, but that he simply had to wait for these privileges until he was properly searched and booked into the ACDC.  These undisputed facts fail to show Plaintiff was subjected to physical harm or a serious risk of contamination in order to meet the objective requirement of the Eighth Amendment test.  *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (citing *Knop v. Johnson*, 977 F.2d 996, 1013 (6th Cir. 1992) (finding that a prisoner occasionally being forced to urinate in his cell when an office was unavailable to take the prisoner to the restroom did not violate the Eighth Amendment)).

Additionally, the summary judgment record is devoid of any facts indicating Defendants Wood or Burnside acted with the requisite state of mind to meet the subjective component of an Eighth Amendment claim.  *See Revels,* 382 F.3d at 875 (Deliberate indifference is established when the Plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety.").  There is nothing in the record to indicate Defendants Wood or Burnside acted with deliberate indifference to Plaintiff's health or safety in requiring him to wait until he was properly booked and searched to use the restroom at the ACDC.

Further, Defendants allowed Plaintiff not only use of the restroom but also a shower and a change of clothes.  Based on the summary judgment record I find Plaintiff's conditions of confinement claim fails as a matter of law.

D.    <u>Denial of medical care and medication</u>

According to the Ashley Defendants, Plaintiff was booked into the ACDC on October 29, 2011 with no prescription medications.  Plaintiff was allowed to use the phone and make two phone calls but neither call resulted in anyone bringing Plaintiff his medications.  On October 31, 2011, during a transport to Court, the transporting officers stopped and retrieved prescription medications from Plaintiff's apartment.  That same day Plaintiff was returned to the ACDC and began taking the medications retrieved from his apartment.  Defendant Woods passed out Plaintiff's medication on a couple of occasions and Defendant Burnside never handled Plaintiff's medications. While incarcerated at the ACDC Plaintiff received Sucralfate, Lithium, Trazodone, and Clonazepam.

Additionally, on November 16, 2011, Plaintiff suffered what he characterizes as a heart attack and the paramedics were called to the ACDC.  The paramedics examined Plaintiff and Plaintiff was then released from the ACDC.  Plaintiff did not seek any further medical attention after leaving the ACDC that day.

In his oral response, Plaintiff testified he told Defendant Woods his medical history and his prescription medication list when he was booked into the ACDC.  Additionally, the ACDC had a nurse during the day but not at night.  Plaintiff stated he complained of a headache and his head was still bleeding from his arrest when he arrived at the ACDC.  Further, Plaintiff stated he suffered migraines from the head wound he received at his arrest and his sick call requests were ignored. Plaintiff was taken to the emergency room before he was booked into the ACDC by non-ACDC employees.  Defendants Woods and Burnside were not present when Plaintiff was arrested.  Plaintiff also stated  that on October 31, 2011 a Warren Police Officer took Plaintiff to his home

to get his medications.  Further, Plaintiff stated that once back at the ACDC he was given the medication that the Warren Police Department obtained from Plaintiff's house.  However, Plaintiff claims he could not get his pain medication from Dr. Weaver, a non-Defendant.  Specifically, Plaintiff stated he did not receive his codeine cough syrup and narcotic pain medications.  Plaintiff did agree, however, that he had access to over the counter pain medication while incarcerated at the ACDC and did not dispute he received his other medications.

Plaintiff also testified he suffered a heart attack from medications that a jailer gave him. This jailer is not a named defendant here.  The paramedics responded to the ACDC to examine Plaintiff.  Plaintiff was released from the ACDC the same day, but it was not Defendant Burnside or Defendant Woods that made the decision to release Plaintiff.  Finally, Plaintiff did not seek follow-up medical care for his heart attack once he was released from the ACDC.

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs.  *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012).  The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard.  *See Butler v. Fletcher,* 465 F.3d 340, 344 (8th Cir. 2006).  To prevail on his Eighth Amendment claim, Plaintiff must prove Defendants acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'"  *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132

12

F.3d 1234, 1239 (8th Cir. 1997)).

In order to show  he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation.  Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976).  However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009).  The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record.  *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005).  Unless, however, the need for medical attention is obvious to a layperson in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay.  *See Schaub v. VonWald,* 638 F.3d 905, 919 (8th Cir. 2011) (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999); *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995); *see also Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate

13

is suffering, can support a finding of an Eighth Amendment violation").

Here Plaintiff has three distinct claims: (1) his prescription medication was delayed; (2) he was denied specific pain medication; and (3) he suffered a heart attack all while at the ACDC.[5]

First, I will address Plaintiff's claim regarding the delay of his prescription medication.  I find the delay of two days to receive prescription medication does not amount to deliberate indifference.  It is undisputed that Plaintiff was booked into the ACDC on October 29, 2011 and began receiving his medication on October 31, 2011.  This lapse of two days without his prescribed medication does not rise to the level of a constitutional violation.  *See Ervin v. Busby*, 992 F.2d 147, 150-51 (8th Cir. 1993) (holding the delay of one month in securing a pre-trial detainee's anti-depressant prescription did not rise to the level of deliberate indifference).

Furthermore, Plaintiff has not presented any verifying medical evidence showing the objective seriousness of the delay in receiving his prescriptions.  Nor did Plaintiff allege in his oral response that he was harmed in any way by this delay.  He alleges no damages as a result of this delay. Therefore, Plaintiff's claim regarding the delay of his medication fails as a matter of law. *See Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005).

Plaintiff also claims he was denied his codeine cough syrup and narcotic pain medication. It is undisputed that Plaintiff was given all of the medications that the Warren Police Officer retrieved from Plaintiff's home.  Further, it is undisputed that Plaintiff had access to over the counter pain relievers while incarcerated in the ACDC.  Additionally, Plaintiff was only incarcerated  in the ACDC for approximately nineteen (19) days.  It is also undisputed that

---

[5] Plaintiff also mentions facts relating to headaches and medical requests in his oral response, however, it appears these are newly asserted facts and claims and  the Court will not consider new claims made in response to Separate Defendants Motions for Summary Judgment.

14

Defendants Woods and Burnside are not medical personel at the ACDC, and they do not decide what medications are distributed.  As stated above, "[l]iability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights."  *Clemmons v. Armontrout,* 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006)). *Since Defendants Woods and Burnside were not involved in medical treatment decisions at the ACDC and there is nothing on the record to indicate they interfered with any treatment prescribed by the ACDC medical staff, they cannot be liable for denying Plaintiff the codeine cough syrup or narcotic pain medication.  See Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997). Additionally, given the fact that Plaintiff had access to over the counter pain medication, I do not find the denial of narcotic pain medications to be deliberately indifferent to Plaintiff.  Plaintiff was not left to suffer in pain with no recourse.

Finally, Plaintiff claims he suffered a heart attack and was released from the ACDC the same day.  It is undisputed that Plaintiff suffered some type of medical episode the day he was released from the ACDC, however, there is no medical documentation to support Plaintiff's allegation that he suffered a heart attack.  It is also undisputed that the paramedics responded to the ACDC and examined Plaintiff during this medical episode.  Finally, it is undisputed that neither Ashley Defendant was on duty or at the ACDC during this medical episode, nor did either Ashley Defendant play any part in releasing Plaintiff from the ACDC that same day.

For the same reasons as stated above, the Ashley Defendants cannot be held liable for others' actions or medical decisions in which they played no part.  The Ashley Defendants must have direct responsibility for the action complained of and the summary judgment record here does not support such a finding.  *See  Clemmons*, 477 F.3d at 967;  *Keeper*, 130 F.3d at 1314.

E.   Religion claim

Plaintiff claims he was denied his religious rights.  Ashley Defendants assert Plaintiff had access to his Koran, prayer rug, and prayer cap and they did not violate Plaintiff's religious rights.

In his oral response, Plaintiff testified the ACDC did not hold a group Islam religious service and they would not contact a Muslim spiritual leader for him.  Plaintiff did not call a Muslim leader himself because he did not have any money to use the phone, but he did write a Muslim spiritual leader in Pine Bluff, Arkansas.  This Muslim leader did not come to the ACDC during the nineteen (19) days Plaintiff was incarcerated there, however, he has since responded to Plaintiff and now visits him at the ADC.  Further, Plaintiff testified his prayer cap was taken from him at booking into the ACDC but it was given back to him.  Lastly, Plaintiff testified he was not prevented from praying and worshiping while incarcerated at the ACDC.

As explained above, "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution."  *Turner v. Safley*, 482 U.S. 78, 84 (1987).  "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *see also Cruz v. Beto*, 405 U.S. 319 (1972).  However, this right is not without limitation.  The Supreme Court has recognized  "incarceration brings about the necessary withdrawal or limitation of many privileges and rights."  *O'Lone*, 482 U.S. at 348.   Like with the freedom to receive ideas, "the free exercise right is limited insofar as a prisoner's adherence to religious practices may be regulated by prison authorities, so long as such regulations are' reasonably related to legitimate penological interests.'"  *Murphy v. Carroll*, 202 F. Supp. 2d 421, 424 (D. Md. 2002)*(quoting Turner*, 482 U.S. at 89; *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-349 (1987); *Cruz*, 405

16

U.S. at 322)); *see also Thomas v. Gunter*, 32 F.3d 1258, 1259-60 (8th Cir. 1994).  "A prisoner need not be afforded his preferred means of practicing his religion as long as he is afforded sufficient means to do so."  *Murphy v. Missouri Department of Corrections*, 372 F.3d 979, 983 (8th Cir. 2004).  Specifically, it has been held  inmates are entitled to a diet sufficient to sustain health and satisfy religious dictates.  *See McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987).

In order to present a valid First Amendment claim in this context, Plaintiff has the "burden of establishing that the alleged religious belief or ritual in question is based on a teaching of the religion [Islam], that [Plaintiff's] belief in the teaching is sincerely held, and that the governmental action in question actually infringe[d] upon [his] free exercise of this belief."  *Goff v. Graves,* 362 F.3d 543, 547 (8th Cir. 2004).

First, it is undisputed that Defendant Woods played no part in denying Plaintiff any form of religious exercise.  Further, it is undisputed that Defendant Burnside returned Plaintiff's prayer cap and Koran to him after Plaintiff was booked into the ACDC.  Additionally, Plaintiff stated at his oral response that he was not prevented from praying and worshiping.  According to Plaintiff's oral response, his only complaints are that the ACDC did not hold a group Muslim service for inmates or that the ACDC did not contact a Muslim leader for Plaintiff in the nineteen (19) days Plaintiff was incarcerated there.  However, Plaintiff does not claim that either Ashley Defendant played any role in this alleged denial.  Plaintiff did not assert he requested either Ashley Defendant to contact a Muslim leader for him or that he requested either Ashley Defendant to organize a group Muslim worship service.

Once again, a claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. "Liability under section 1983 requires a causal link to, and direct

responsibility for, the deprivation of rights." *Clemmons v. Armontrout,* 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006)).  Plaintiff made no claims that Defendant Woods took any actions that infringed on his religious freedoms, and the only statements Plaintiff made regarding Defendant Burnside is that he returned Plaintiff's prayer cap and Koran to him after booking.  Lastly, Plaintiff made no allegations that either Ashley Defendant denied him group worship services.  Therefore, the summary judgment record does not show the Ashley Defendants took any actions infringing on Plaintiff's religious freedoms and Plaintiff's religious claims fail as a matter of law.

Furthermore, Plaintiff's claims that he was denied group worship or a Muslim spiritual advisor for the 19 days he was housed in the ACDC were asserted to the Court for the first time during Plaintiff's oral response.[6]  I will not consider claims that are first asserted in response to Defendants' motions for summary judgment.  *See Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984) (While *pro se* pleadings are to be construed liberally, a *pro se* litigant is not excused from complying with substantive and procedural law.); *Haggins v. City of St. Paul,* Civil No. 09-537, 2010 WL 1380134, at *13 (D.Min. Mar. 1, 2010) (declining to consider claims not raised in pleadings).  Plaintiff was allowed to clarify his claims and amend his Complaint through the Addendum and this matter has been pending for over two years.  I will not consider new claims presented to the Court at this late stage and through improper methods despite Plaintiff's status as

---

[6] Due to the convoluted nature of Plaintiff's Complaint, I sent Plaintiff an Addendum to clarify his claims.  Plaintiff completed this Addendum and returned it to the Court on May 23, 2013. In this Addendum, I specifically asked Plaintiff to explain his claims regarding the infringement on his religious rights in detail.  Plaintiff responded: "I wasn't able to continue going to Pine Bluff Ark To Worship on Fridays, Tumal Prayer Service, Ramdans, Etc My true spiritual growth, N/A."  ECF No. 10, p. 17-18 (errors in original).  There is no mention of the ACDC denying Plaintiff group religious services or a Muslim spiritual advisor.

a *pro se* litigant.

    E.    <u>Due process claim</u>

Plaintiff also claims the Warren Defendants violated his constitutional rights when they improperly disposed of his personal property from his apartment at the WHA.  The Warren Defendants argue they did not violate Plaintiff's constitutional rights by disposing of Plaintiff's personal property after Plaintiff was arrested and incarcerated.  Instead, the Warren Defendants allege they disposed of Plaintiff's personal property pursuant to his instructions and authorization. Specifically, the Warren Defendants allege Plaintiff signed an Agreement stating:

> The undersigned, formerly a Tenant of Warren Housing Authority, acknowledge that I have terminated my Lease with Warren Housing Authority for the apartment located at #64 Kings Square West.  I have left some of my property in that apartment.  I do not want to move that property, and therefore I give up all rights in whatever I have left and consent to the immediate disposal of that property by Warren Housing Authority.  I hereby release Warren Housing Authority, the City of Warren, Arkansas, its employees and Board Members, from any liability in disposing of this property.

Agreement, ECF No. 64-3.  The Warren Defendants claim they presented Plaintiff with the Agreement to dispose of his property on October 31, 2011 and Plaintiff executed such Agreement that day.

Plaintiff testified under oath in his oral response that he did not sign the Agreement regarding the disposal of his property.  Plaintiff stated that his nephew was going to go pick up Plaintiff's property from his apartment, but his nephew was not listed as a contact on Plaintiff's paper work at the WHA.  These disputed facts, however, are not material to my recommendation regarding Plaintiff's claim against the Warren Defendants because Plaintiff's due process claim fails as a matter of law.

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution. *West v. Atkins,* 487 U.S. 42 (1988); *Dunham v. Wadley,* 195 F .3d 1007, 1009 (8th Cir.1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams,* 474 U .S. 327 (1986); *Davidson v. Cannon,* 474 U.S. 344 (1986).

The WHA is the public housing authority for the City of Warren, Arkansas, and as a public housing authority, the WHA is considered a municipal corporation for the purposes of section 1983. *See Wright v. Philadelphia Housing Authority,* No. 94-1601, 1994 WL 597716, at *3 (E.D. Pa. Nov. 1, 1994). In other words, the WHA is a state actor for purposes of section 1983. Further, Plaintiff is entitled to due process rights regarding his personal property because personal possessions constitute property for purposes of the Fourteenth Amendment. *See Fuentes v. Shevin,* 407 U.S. 67, 84 (1972). Therefore, I presume Plaintiff's constitutional claim regarding his personal property is that the Warren Defendants, as state actors, deprived him of his personal property without due process of the law in violation of his Fourteenth Amendment rights.

In order to prevail on a Fourteenth Amendment claim, Plaintiff must show he was deprived of life, liberty, or property by government action. *Orr v. Larkins,* 610 F.3d 1032, 1034 (8th Cir. 2010). However, there is no due process violation, and thus no section 1983 claim, when a state actor deprives a person of personal property as long as there is an adequate state-law, post-deprivation remedy available. *See Hudson v. Palmer*, 468 U.S. 517, 529-30 (1984) (unauthorized, negligent, or intentional deprivation of property by state employee does not violate Due Process

20

Clause if adequate state post-deprivation remedy is available).  *See also Rheuport v. Ferguson*, 819 F.2d 1459, 1467-8 (8th Cir. 1987) (state tort remedies are the exclusive remedies available to the plaintiff for any deprivations suffered during or after a writ of execution was executed on his mobile home); *Greco v. Guss,* 775 F.2d 161, 169 (7th Cir. 1985) ("Access to a tort claim precludes [the plaintiffs] from using section 1983 to compensate them for their injuries.")

Here, Plaintiff does not appear to challenge any policies or procedures of the WHA but instead only the actions of the Warren Defendants in disposing of his property.[7]  Therefore, I find the Warren Defendants' actions, if unlawful, were not authorized by the City of Warren or the State of Arkansas.[8]  Further, Plaintiff has available to him the state tort claim of conversion to seek relief from the Warren Defendants if in fact they illegally deprived him of his personal property.[9] *See McQuillian v. Mercedes-Benz Credit Corp.,* 331 Ark. 242, 247, 961 S.W.2d 732 (Ark. 1998) (conversion is a common-law tort action for the wrongful possession or disposition of another's property.).

Further, during his oral response to the Warren Defendants' Motion for Summary Judgment, Plaintiff testified that he went to the WHA office after being released from the ACDC and filed a grievance regarding his personal property.  I presume this grievance procedure referred

---

[7] I am aware Plaintiff stated in his Addendum that he was making both official and individual claims against all Defendants in this matter, however, as explained above in Section B on official capacity, Plaintiff made no allegations regarding any policies or customs of either the ACDC or WHA that violated his constitutional rights in his Complaints, Supplements, or Addendums.

[8] This Report and Recommendation is not intended to make finds as to whether the Agreement is enforceable as there is issue of fact as to whether Plaintiff signed it.  I will not resolve issues of fact on summary judgment.

[9] It does not appear Plaintiff is challenging his eviction from WHA, but only the disposal of his personal property.

to by Plaintiff is the WHA's administrative grievance procedure pursuant to 42 U.S.C.A. § 1437d(k). Section 1437d(k) requires public housing agencies receiving federal assistance to provide specific administrative grievance procedures for tenants. 42 U.S.C.A. § 1437d(k) (2000).[10] These federally mandated grievance procedures, outlined in section 1437d(k), have been determined by the Eighth Circuit Court of Appeals to be sufficient to satisfy any due process concerns. *See Hunter v. Underwood*, 362 F.3d 468, 479 (8th Cir. 2004). Plaintiff made no allegation that these administrative procedures were unavailable to him. Accordingly, Plaintiff not only had state post-deprivation remedies through a tort claim of conversion, but he also had access to administrative procedures at the time of the purported deprivation. Therefore, Plaintiff's due process claim against the Warren Defendants for improperly depriving him of his personal property fails as a matter of law.

## 4.   CONCLUSION

Accordingly, I recommend Separate Defendants Carolyn Byrd, Sheila Jackson, and James Kitchen's Motion for Summary Judgment (ECF No. 63) be **GRANTED**, and Separate Defendants John Burnside and Alice Woods' Motion for Summary Judgment (ECF No. 66) be **GRANTED** and Plaintiff's claims in both Civil No. 1:12-cv-01071 and Civil No. 1:12-cv-01071 against these Defendants be **DISMISSED** with prejudice. Further, I recommend Defendant Shaun Doe be **DISMISSED** without prejudice for failure to serve. This leaves only Plaintiff's claims against Defendant Dispatcher Jolly remaining in this consolidated matter.

**The parties have fourteen (14)  days from receipt of the report and recommendation**

---

[10] Section 1437 and its implementing regulations do not grant federal agency status to local public housing agencies. *See Hunter,* 362 F.3d at 477; 42 U.S.C.A. § 1437 (2000).

in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 27th day of May 2015.

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE